UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
————————————————————————

CRYSTAL A. CALLAHAN,

                              Plaintiff,      **No. 6:14-cv-06553(MAT)**
                                              **DECISION AND ORDER**

               -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.
————————————————————————

## I.   Introduction

Represented by counsel, Crystal A. Callahan ("Plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rule of Civil Procedure. For the reasons discussed below, the Commissioner's decision is reversed and the matter is remanded for further administrative proceedings.

## II.  Background

On April 11, 2012, Plaintiff filed an application for DIB, alleging disability based on back pain, depression, and anxiety,

with an onset date of October 25, 2010. T.87, 124-28.[1] After her initial DIB application was denied, Plaintiff requested a hearing, which was held via videoconference before administrative law judge Joseph L. Brinkley ("the ALJ") on July 11, 2013. T.41-76. Plaintiff appeared with her attorney and testified at the hearing, as did a vocational expert. On August 23, 2013, the ALJ issued an unfavorable decision. T.18-35. Plaintiff filed an administrative appeal, which was denied by the Appeals Council on August 27, 2014, thereby making the ALJ's decision the final decision of the Commissioner. This timely action followed.

The parties have filed cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rule of Civil Procedure. The Court adopts and incorporates by reference herein the undisputed and comprehensive factual summaries contained in the parties' briefs. The Court will discuss the record evidence further below, as necessary to the resolution of the parties' contentions.

## III. Scope of Review

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, the district court is limited to determining whether the Commissioner's findings were supported by substantial record evidence and whether the

---

[1]

Citations to "T." refer to pages from the certified transcript of the administrative record, submitted by the Commissioner in connection with her answer to the complaint.

Commissioner employed the proper legal standards. <u>Green-Younger v. Barnhart</u>, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. <u>See</u> 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. <u>Tejada v. Apfel</u>, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." <u>Byam v. Barnhart</u>, 336 F.3d 172, 179 (2d Cir. 2003) (citing <u>Townley v. Heckler</u>, 748 F.2d 109, 112 (2d Cir. 1984)).

**IV.  The ALJ's Decision**

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating DIB claims. <u>See</u> 20 C.F.R. § 404.1520. Plaintiff last met the insured status requirements of the Act on March 31, 2013, and did not engage in substantial gainful activity during the period from her alleged onset date of October 25, 2010, through her date last insured.

At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, fibromyalgia, obesity, bipolar disorder, and anxiety disorder/panic disorder.

At step three, the ALJ determined that Plaintiff does not have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. In particular, the ALJ considered Listing 12.04 (Affective Disorders) and Listing 12.06 (Anxiety Disorders. Considering the "Paragraph B" criteria for these listings, the ALJ found that she has "mild" difficulties with activities of daily living.  In terms of social functioning, the ALJ found that Plaintiff had "moderate" difficulties given that there was "some evidence" in the record that Plaintiff's mood disorder and anxiety caused limitations in this area, and she reported difficulties getting along with her supervisors at work. In addition, her mental health records showed that Plaintiff reported being short-tempered with her children and having some problems with anxiety, including social phobia and panic attacks. With regard to concentration, persistence and pace, the ALJ found that Plaintiff would have "moderate" difficulties.

The ALJ found that Plaintiff has not experienced any episodes of decompensation of extended duration, insofar as her medical records do not indicate exacerbations or temporary increases in mental health symptoms, accompanied by the loss of adaptive functioning. Therefore, the ALJ concluded, Plaintiff does not meet or medically equal the criteria for Listing 12.04 or Listing 12.06.

The ALJ then proceeded to assess Plaintiff's residual functional capacity ("RFC"), and concluded that she retains the ability to perform "light" work, as defined in 20 C.F.R. § 404.1567(a), with some postural and environmental limitations as follows:

> [Plaintiff] must have a sit and stand at will option; she must remain at her work station when not on regularly scheduled breaks. She must elevate both feet to waist level when sitting. She can occasionally climb ramps and stairs, balance, kneel, and stoop. She can never crawl, crouch, and climb ladders, ropes, and scaffolds. She must avoid concentrated exposure to wetness, vibration, extreme temperatures, work place hazards such as unprotected heights and dangerous machinery. . . .

T.25-26. In regards to the mental aspect of Plaintiff's RFC, the ALJ stated as follows:

> [Plaintiff] can perform simple, routine, and repetitive tasks. She can have superficial contact with the general public, as in exchanging greetings in passing, but cannot have ongoing direct contact. She can engage in contact with supervisors and coworkers that is incident to the position. She can occasionally engage in team or tandem work. She is limited to low stress jobs that do not involve high production quotas or fast pace assembly line jobs.

T.26.

At step four, the ALJ stated that Plaintiff had past relevant work as a school bus driver and a medical technician performing electrocardiograms. At the hearing, the vocational expert ("VE") testified that a person with the RFC outlined above would not be able to perform these jobs. Therefore, the ALJ found, Plaintiff was

-5-

unable to perform any past relevant work through the date last insured.

At the fifth step, the ALJ found that Plaintiff, at 42 years-old, was a "younger individual" for purposes of the Act; had at least a high school education; and was able to communicate in English. The ALJ relied on the VE's testimony that a person of Plaintiff's age, and with her education, work experience, and RFC, would be able to perform the requirements of representative occupations such as assembler, hand packer, and machine tender. The ALJ specifically found that the VE's testimony regarding the availability of the sit/stand option in these occupations was based on her years of experience in the field. The ALJ accordingly entered a finding of "not disabled."

## V.   Discussion

Plaintiff argues that the ALJ erred in his weighing of the opinions given by her treating psychiatrist, primary care physician, and pain management specialist. Plaintiff also argues that the ALJ's credibility assessment is flawed.

### A.   The ALJ's Application of the Treating Physician Rule

#### 1.   The Law

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued

-6-

opinions that are not consistent with other substantial evidence in the record. . . ." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (internal and other citations omitted). When an ALJ declines to accord controlling weight to a treating physician's opinion, the ALJ "must consider various 'factors' to determine how much weight to give to the opinion[,]" id. (quoting 20 C.F.R. § 404.1527(d)(2)), such as "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist;  and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.'" Id. (quoting 20 C.F.R. § 404.1527(d)(2)).

A corollary to the treating physician rule is the so-called "good reasons rule," which is based on the regulations specifying that "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion. Halloran, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R. § 416.927(d)(2); Schaal v. Apfel, 134 F.3d 496, 503-04 (2d Cir. 1998)). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific . . . .'" Blakely v. Comm'r of Social Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at

*5 (S.S.A. July 2, 1996)). Because the "good reasons" rule exists to "ensur[e] that each denied claimant receives fair process," Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 243 (6th Cir. 2007), an ALJ's "'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record.'" Blakely, 581 F.3d at 407 (quoting Rogers, 486 F.3d at 243; emphasis in Blakely).

## 2.   Treating Psychiatrist's Opinion

Dr. Ronald Spurling is Plaintiff's treating psychiatrist who issued a medical source statement on May 13, 2013. The parties do not dispute that Dr. Spurling, who began seeing Plaintiff on January 3, 2012, qualifies as a treating source for purposes of the treating physician rule. Dr. Spurling completed a form titled, "Evaluation of the Residual Functional Capacity of the Mentally Impaired Patient." T.510-13. In connection with Plaintiff's "ability to understand and remember," Dr. Spurling rated her ability to comprehend and carry out simple instructions as "[g]ood," which the form defined as a "limited but satisfactory" ability to function. T.510. Dr. Spurling rated her ability to remember work procedures and to remember detailed instructions as "[f]air," which the form defined as having a "seriously limited" ability that "will result in periods of unsatisfactory performance

-8-

at unpredictable times." <u>Id.</u> In these two areas, Dr. Spurling noted that Plaintiff's abilities would be "okay as long as not under significant stress." T.510. With regard to "social interactions," Dr. Spurling assessed her ability to respond appropriately to supervisors and ability to respond appropriately to co-workers as "[p]oor," T.511, which the form defined as having "[n]o useful ability to function in this area." T.510. Dr. Spurling noted she was "likely to have exacerbation of anxiety or anger/irritability if she feels accused, singled out by supervisor" and she "has varying mood with anxiety and irritability." T.511. With regard to "sustained concentration and persistence," Dr. Spurling rated Plaintiff's ability to complete a normal workday on a sustained basis and to concentrate and attend to a task over an eight-hour period as "[p]oor." T.511. Dr. Spurling opined that her ability to function independently on a job, exercise appropriate judgment, abide by occupational rules, and make appropriate judgments was "fair." T.511-12. As far as "routine functions" and "stress," Dr. Spurling opined that her ability to maintain social functioning and to tolerate customary work pressures in a work setting including production requirements and demands was "[p]oor," T.512, which, as noted above, the form defined as having "[n]o useful ability to function in this area." T.510. Dr. Spurling commented that "stress leads to extremes of behavior such as agitation, yelling, or anxiety/panic." T.512. Dr. Spurling stated that she

would be absent from work due to her impairments more than 4 days per month, and he opined that she could not work more than 4 hours per day or 15 to 20 hours per week. T.513. He stated that these limitations had been reasonably consistent and continuing since October 25, 2010. Id.

The ALJ, however, did not acknowledge that Dr. Spurling was Plaintiff's treating psychiatrist.  The ALJ, determined that Dr. Spurling's opinion was entitled to "some weight," T.32, but the ALJ did not reference the factors set forth in the regulations that are to be considered when declining to give a treating source opinion controlling weight. Instead, the ALJ summarily stated that Dr. Spurliing's opinion "is inconsistent with the objective medical evidentiary record and his own treatment notes, when viewed in its totality." Id. This reason, which is vague and conclusory, does not allow for meaningful judicial review and does not constitute a "good reason" for purposes of fulfilling the Commissioner's duty under the applicable regulations. See Lane v. Astrue, 267 F.R.D. 76, 84 (W.D.N.Y. 2010) (finding reversible error where "[t]he ALJ did not give controlling weight to the opinions of [treating physicians] Brubaker and Carstens, and instead relied on the opinion of Morawski, a non-treating physical therapist who examined Plaintiff on one occasion, stating merely that such opinions by Brubaker and Carstens were 'not well supported' "; finding "[s]uch a cursory statement [to be] insufficient"). Furthermore, the "post

hoc rationalizations" offered by the Commissioner in her brief as
to why the ALJ justifiably rejected Dr. Spurling's opinion "are not
entitled to weight by a reviewing court." Hill v. Astrue,
No. 1:11-CV-0505(MAT), 2013 WL 5472036, at *7 (W.D.N.Y. Sept. 30,
2013) (citing, inter alia, Demera v. Astrue, No. 12-CV-432(FB),
2013 WL 391006, at *3 n. 3 (E.D.N.Y. Jan. 24, 2013) ("The
Commissioner attempts to justify the ALJ's determinations by noting
that Dr. Karpe's opinion was inconsistent with the record evidence
and that Dr. Vosseller's opinion was conclusory on an issue
reserved for the Commissioner. The ALJ did not provide these
explanations, however, and post hoc rationalizations for the ALJ's
decision are not entitled to any weight.") (citations omitted).

Later in his decision, the ALJ noted that he had considered
Plaintiff's representative's hypothetical to the VE regarding a
person who had "no useful ability to function" in certain areas.
T.34.[2]  The ALJ explained that he rejected Plaintiff's
representative's hypothetical because "Dr. Spurling's mental
residual functional capacity assessment does not qualify the
claimant's limitations [sic] as having 'no useful ability to
function' in certain areas." T.34. However, that is misstatement of
the record, since the form defined "poor" as having "no useful
ability to function," and Dr. Spurling assigned a rating of "poor"

---

[2]
  In response to that hypothetical, the vocational expert
testified that such a limitation would preclude all employment. See
T.72-73.

to multiple domains of functioning. Because this comment is based on the ALJ's misreading of the record, it cannot suffice as a "good reason" for discounting Dr. Spurling's opinion. See, e.g., Briscoe v. Astrue, 892 F. Supp.2d 567, 580 (S.D.N.Y. 2012) ("[I]nsofar as the ALJ relied on this perceived [but not actual] inconsistency as a basis for giving little weight to [treating physician] Dr. Contreras's opinion, this would reflect that the ALJ has not proffered an acceptable basis for discrediting Dr. Contreras's findings.").

The Court notes that the ALJ determined to afford "great weight" to the opinion of Dr. Yu-Ying Lin, the consultative psychologist who examined Plaintiff at the Commissioner's request. Dr. Lin opined that Plaintiff, due to her mental impairments, "cannot relate adequately with others" and "cannot appropriately deal with stress." T.403. Nonetheless, Dr. Lin opined, Plaintiff's psychiatric impairment "does not appear to be significant enough to interfere with [her] ability to function on a daily basis." T.403. Dr. Lin's opinion thus contains a significant internal inconsistency. As Plaintiff points out, the Commissioner's rulings indicate that severe deficits in interpersonal relations and dealing with stress do have a major impact on a claimant's ability to fulfill the mental demands of competitive employment. See, e.g., SSR 85-15, 1985 WL 56857, at *4 (S.S.A. 1985) ("The basic mental demands of competitive, remunerative, unskilled work include the

abilities (on a sustained basis) to . . . respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base."). The fact that the ALJ gave greater weight to the opinion of a consultative psychologist, which contained an obvious inconsistency that the ALJ did not bother to address, undermines the rationality of the ALJ's analysis of Dr. Spurling's opinion and constitutes an improper cherry-picking of the record. See Nix v. Astrue, No. 07-CV-344, 2009 WL 3429616, at *6 (W.D.N.Y. Oct. 22, 2009) ("It is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination.") (citing Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004); other citation omitted).

The Second Circuit has observed that courts "do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion[,]" and has instructed that courts "[should] continue remanding when [they] encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004). Because the

-13-

"[f]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand[,]" <u>Snell v. Apfel</u>, 177 F.3d 128, 133 (2d Cir. 1999), this case must be remanded so that the ALJ can re-evaluate Dr. Spurling's treating source opinion in light of the caselaw and regulatory factors. <u>See</u>, <u>e.g.</u>, <u>Richardson v. Barnhart</u>, 443 F. Supp.2d 411, 424-25 (W.D.N.Y. 2006) (remanding for a second time where the ALJ's decision "did not give good reasons, supported by substantial evidence, for failing to assign controlling weight to the opinion of a treating source" and the ALJ "failed to follow the treating physician rule by ignoring substantial evidence of record and by committing legal error in his analysis of [the treating physician]'s opinions").

## 2.   Treating Pain Management Specialist

Donovan Holder, M.D. is Plaintiff's treating pain management specialist. The parties do not dispute that Dr. Holder, who began seeing Plaintiff on March 12, 2012, qualifies as a treating source for purposes of the treating physician rule. On August 10, 2013, Dr. Holder completed a form titled, "Evaluation of the Residual Functional Capacity of the Physically Impaired Patient." T.505-08. Dr. Holder diagnosed Plaintiff as follows: "729.1 Myofascial [Pain Syndrome]-Fibromyalgia" and "Lumbar [Degenerative Disc Disease] (722.52)." T.505. With regard to climbing, balancing, stooping, crouching, kneeling, crawling, climbing stairs, reaching, pushing, and pulling, Dr. Holder opined that Plaintiff could perform these

-14-

actions "[o]ccasionally," which the form defined as "2-3 hrs/day."
T.505. Dr. Holder opined that Plaintiff could stand continuously
for 2 hours and for 4 hours total in an 8 hour day; could walk for
2 hours in an 8 hour day; and could sit for 6 hours in an 8 hour
day. Dr. Holder estimated that she would be off task frequently
(34% to 66% of an 8-hour workday) due to her pain and other
symptoms, and that she would miss about 3 days of work per month.
T.506.

The ALJ disregarded Dr. Holder's specific opinions as to
Plaintiff's ability to, e.g., reach, push, and pull, since he found
that Plaintiff had the RFC to perform representative jobs that
required "constant" or "frequent" reaching. See, e.g., T.71 (VE
testifying that "[o]n the assembler it's a constant reach, and on
the hand packer also. The machine tender is a frequent."). Overall,
the ALJ assigned only "some weight" to Dr. Holder's opinion, again
stating without explanation that it "is inconsistent with the
objective medical evidentiary record and his own treatment records
discussed above, when viewed in its totality." T.33. As with
Dr. Spurling's opinion, the ALJ did not address the factors that
the Commissioner's regulations specify must be considered when
deciding to afford less than controlling weight to the opinion of
a treating source such as Dr. Holder. His generic statement that
Dr. Holder's opinion is "inconsistent" with the record does not
allow for meaningful judicial review and does not constitute a

"good reason" for purposes of fulfilling the Commissioner's duty under the applicable regulations. See Lane, 267 F.R.D. at 84. Moreover, it appears that the ALJ ignored the objective medical evidence confirming Plaintiff's disc herniation, insofar as lumbar x-rays in November 2012 showed a loss of lordosis with L5-S1 disc space narrowing and facet arthropathy at L5-S1, T.434, and an MRI showed disc herniation at L5-S1 with nerve root compression at S1, T.358. The ALJ also apparently discounted Dr. Holder's opinion based on his characterization of Plaintiff's course of treatment as "conservative." T.31. However, the Second Circuit has explained that the opinion of the treating physician is not "to be discounted merely because he has recommended a conservative treatment regimen." Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) (citation omitted). Dr. Holder performed a series of nine epidural injections, which did not provide "prolonged benefit," T.411. Plaintiff also was prescribed multiple medications to address her pain, including Lyrica, Neurontin, tramadol, and Zanaflex, in addition to the over-the-counter medications (Tylenol and ibuprofen) she took for pain control. T.411. Comparatively speaking, Dr. Holder's treatment plan for Plaintiff was not especially conservative. See Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000) (district court erred in ruling that the treating physician's "recommend[ation of] only conservative physical therapy, hot packs, EMG testing—not surgery or prescription

drugs—[w]as substantial evidence that [the claimant] was not physically disabled"). Regardless, "[t]he ALJ and the judge may not 'impose[ ] their [respective] notion[s] that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered . . . .'" <u>Burgess</u>, 537 F.3d at 129 (quoting <u>Shaw</u>, 221 F.3d at 134).

Because the "[f]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand[,]" <u>Snell</u>, 177 F.3d at 133, this case must be remanded so that the ALJ can re-evaluate Dr. Holder's treating source opinion in light of the caselaw and regulatory factors.

## VI. Conclusion

For the foregoing reasons, the Court finds that the Commissioner's determination was erroneous as a matter of law, and that remand is required. Defendant's Motion for Judgment on the Pleadings (Dkt #10) is denied, and Plaintiff's Motion for Judgment on the Pleadings (Dkt #7) is granted to the extent that the matter is remanded for further administrative proceedings consistent with this decision. Specifically, the ALJ is directed to (1) re-evaluate Dr. Spurling's treating source opinion and, if the ALJ elects not to accord it controlling weight, give "good reasons" in accordance with the regulations for the decision not to assign it controlling weight; and (2) re-evaluate Dr. Holder's treating source opinion and, if the ALJ elects not to accord it controlling weight, give

"good reasons" in accordance with the regulations for the decision
not to assign it controlling weight; and (3) re-assess Plaintiff's
mental and physical RFC as necessary in light of the foregoing re-
evaluations.

**SO ORDERED.**

**S/Michael A. Telesca**

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:     September 29, 2015
           Rochester, New York